J-S67045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.F.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.B., FATHER | No. 3576 EDA 2015 |

Appeal from the Order Entered October 19, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): AP#CP-51-AP-0000424-2012
DP#CP-51-DP-0000012-2011
FID#51-FN-379078-2009

| | |
|---|---|
| IN THE INTEREST OF: L.W.B., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.B., FATHER | No. 3577 EDA 2015 |

Appeal from the Order Entered October 19, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): AP#CP-51-AP-0000425-2012
DP#CP-51-DP-0000013-2011
FID#51-FN-379078-2009

| | |
|---|---|
| IN THE INTEREST OF: T.L.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S67045-16

APPEAL OF: L.B., FATHER

No. 3578 EDA 2015

Appeal from the Order Entered October 19, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): AP#CP-51-AP-0000426-2012
DP#CP-51-DP-0000014-2011
FID#51-FN-379078-2009

---

IN THE INTEREST OF: T.E.M.B., A MINOR

IN THE SUPERIOR COURT OF
PENNSYLVANIA

APPEAL OF: L.B., FATHER

No. 3579 EDA 2015

Appeal from the Order Entered October 19, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): AP#CP-51-AP-0000427-2012
DP#CP-51-DP-0000015-2011
FID#51-FN-379078-2009

BEFORE: FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:             **FILED NOVEMBER 01, 2016**

Appellant, L.B. ("Father"), appeals from the October 19, 2015, decrees

and orders involuntarily terminating his parental rights to L.F.B. (born in

June of 2007), L.W.B., Jr. (born in July of 2008), T.L.B. (born in July of

2008), and T.E.M.B. (born in September of 2010) (collectively, "Children")

---

[*] Former Justice specially assigned to the Superior Court.

- 2 -

pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and changing Children's permanency goal to adoption under Section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351.[1] We affirm.

In its opinion, the trial court set forth exhaustively the relevant history of this case. *See* Trial Court Opinion, 3/31/16, at 2-16. We set forth herein only those facts, as found by the trial court, that are necessary to understand our disposition of the appeal. *See id*.

In August 2010, the Philadelphia Department of Human Services ("DHS") received allegations that Father and Mother resided with Children in an unfit, cluttered and bed bug-infested house. After the birth of T.E.M.B, DHS placed the family at the Travelers Aid Shelter because DHS did not want the newborn in a home with bed bugs. On December 30, 2010, the shelter evicted Father after he exhibited aggressive and threatening behavior towards the staff members. On January 3, 2011, DHS received a General Protective Services ("GPS") report that Father was the primary caregiver of Children prior to his eviction from the shelter, and Children lacked appropriate supervision under Mother's sole care due to her limited

---

[1] In the same decrees and orders entered on October 19, 2015, the trial court involuntarily terminated the parental rights of T.H. ("Mother"), the natural mother of Children. Mother was absent from the termination hearing, but was represented by counsel, and the court proceeded with the hearing in her absence. Mother is not a party to this current appeal, but Mother filed a separate appeal on November 18, 2015, which is addressed in a separate Memorandum. This appeal does not address the decrees and orders terminating Mother's parental rights to Children.

cognitive capabilities, her epileptic condition, and the drowsiness caused by her seizure medication. On January 4, 2011, DHS went to the shelter to check on Mother and Children, where they observed that Children were inappropriately dressed and Mother was drowsy, overwhelmed, and unable to care for Children. That same day, DHS obtained an Order of Protective Custody ("OPC") for Children and placed them in foster care through Devereaux Foundation. The Philadelphia Police provided DHS with assistance because Father tried to interfere with Children's placement into foster care.

On January 13, 2011, the trial court adjudicated Children dependent. On February 3, 2011, DHS established a Family Service Plan ("FSP"), which set the goal of reunification with Children. Father's FSP goals were: (1) to participate in parenting education; (2) to set age appropriate expectations for Children; (3) to participate in a mental health evaluation; (4) to comply with all treatment recommendations, therapy and/or medications; (5) to sign authorization forms; (6) to maintain contact and visitation with Children; (7) to regularly attend counseling to improve communication and relationship with Children; (8) to receive a referral for the Achieving Reunification Center ("ARC"); (9) to locate and occupy suitable housing; (10) to participate in a drug/alcohol abuse evaluation; (11) to comply with recommended treatments of the provider; and (12) to achieve and maintain

drug-free status. Several permanency review hearings were held between 2011 through 2014.

On May 24, 2012, DHS revised the FSP goal to adoption. DHS filed petitions to involuntarily terminate Father's and Mother's parental rights to Children on August 24, 2012. After conducting several hearings on the matter, the trial court entered orders, denying the petitions without prejudice on February 25, 2013. On March 25, 2013, the Child Advocate, on behalf of Children, appealed the trial court's orders. This Court affirmed the trial court's orders, determining there was an absence of clear and convincing evidence that termination and changing the goal to adoption was in the best interests of Children. *See In Re L.B.*, *In Re L.B.*, *In Re T.B.*, and *In Re T.B.*, Nos. 901 EDA 2013, 902 EDA 2013, 903 EDA 2013, and 904 EDA 2013 (Pa.Super. filed 12/19/2013) (unpublished memorandum).

On October 20, 2014, DHS filed petitions to involuntarily terminate Father's and Mother's parental rights to Children. On October 19, 2015, the trial court held a hearing on the petitions. At the hearing, DHS presented the testimony of Tamisha Richardson, a caseworker at DHS, and Trina Anderson, a clinical case manager at Deveraux Foundation. Father, who was incarcerated, was present in the courtroom and testified on his own behalf. Mother failed to appear at the hearing, but was represented by counsel. That same day, the trial court entered its decrees and orders terminating

Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

On November 17, 2015, Father timely filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court consolidated Father's appeals *sua sponte* on January 12, 2016.[2] Father raises the following issues in his counseled brief.

1. Whether the trial court erred by terminating the parental rights of [Father], under 23 Pa.C.S.[A.] § 2511 subsections (a)(1), (a)(2), (a)(5), and (a)(8)?

2. Whether the trial court erred by finding, under 23 Pa.C.S.[A.] § 2511(b), that termination of [Father's] parental rights best serves the Children's developmental, physical, and emotional needs and welfare?

Father's Brief at 5.[3]

_____

[2] We note that the certified record for these cases was originally due in this Court by December 17, 2015. However, due to multiple, various circumstances, this Court did not receive the certified record until April 5, 2016. As a result, the briefing schedule for these cases was delayed by over four and a half months. In addition, Father, Child, and DHS all requested and received extensions of time to file briefs, with Father and DHS both filing briefs late despite the extensions.

[3] Father did not challenge the trial court's orders changing the permanency goal for Children to adoption. Thus, this issue is waived. **See Krebs v. United Refining Co.**, 893 A.2d 776, 797 (Pa.Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in his brief on appeal).

*(Footnote Continued Next Page)*

Our Supreme Court has set forth the following standards in reviewing the termination of parental rights.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, [614 Pa. 275, 284,] 36 A.3d 567, 572 (2011) [(plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel-Bassett v. Kia Motors America, Inc.***, 613 Pa. 371[, 455], 34 A.3d 1, 51 (2011); ***Christianson v. Ely***, [575 Pa. 647, 654-55], 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (1994).

_____
*(Footnote Continued)*

*In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). Moreover, we have explained:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003)).

In terminating Father's parental rights, the trial court relied on Subsections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). In the case *sub judice*, we will focus on Section 2511(a)(2) and (b).

Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the

conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

*\*\**

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We have stated:

In order to terminate parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citations omitted).

Our Supreme Court has set forth our inquiry under Section 2511(a)(2) as follows.

As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and

- 9 -

the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

\*\*\*

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 616 Pa. at 326-27, 47 A.3d at 827 (quotations omitted).

On appeal, Father argues DHS failed to present clear and convincing evidence that he is presently incapable of providing proper care to Children. Father's Brief at 12. Father asserts that he has the mental stability, parenting skills, and the sobriety needed to be reunified with Children. *Id*. at 12. Father claims that with the assistance of family members, he will have appropriate housing for Children when he is released from prison. *Id*. Father contends that he has completed all of his FSP objectives, remedied the conditions that brought Children into the care of DHS, and is capable of parenting all of the children at this time. *Id*. at 12-13. Father thus argues that the trial court erred by involuntarily terminating his parental rights. *Id*. at 12.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Children. During the termination hearing, the

ongoing DHS caseworker, Ms. Tamisha Richardson, provided the trial court with the history of the case concerning Children's removal, and the circumstances leading to Children's placement in foster care, where they currently remain. Ms. Richardson testified that Father is currently incarcerated, awaiting trial, and has not seen Children since he was incarcerated in March of 2015. N.T., 10/19/15, at 92-102.

Ms. Richardson also informed the trial court that Father suffers from bipolar disorder and schizophrenia. *Id*. at 44-45. Ms. Richardson listed Father's FSP objectives, testifying that while Father completed drug treatment, obtained suitable housing prior to his incarceration, participated in parenting education, visited Children, and attended mental health therapy, there were still existing concerns pertaining to Father's medication compliance and his ability to parent. Regarding his medication, Ms. Richardson stated that there were moments when he was very compliant and there were moments when he was not compliant throughout the entire case. *Id*. at 50. Ms. Richardson testified that his level of compliance with his medication was high when Father was redirected and low when Father was skeptical of DHS or Children's being in placement. *Id*. at 53. During the periods of Father's non-compliance, DHS took additional steps to protect Children through facilitated, supervised visits. *Id*. at 53-54. Ms. Richardson stated that DHS never reached a level with Father to award him

unsupervised visits with all of the children for an extended time-period. *Id*. at 54.

Ms. Richardson testified that L.F.B. and L.W.B., Jr., are both autistic and have special needs, but L.F.B.'s autism is more severe and requires a higher degree of monitoring by her caregiver. *Id*. at 68-70. She further stated that T.L.B. and T.E.M.B. are neurotypical. *Id*. at 79. Ms. Richardson testified that Father and Mother did not adequately address Children's developmental needs prior to Children's placement into foster care. *Id*. at 25, 90. Coming into placement, T.L.B. and T.E.M.B. were initially diagnosed as developmentally delayed, but are currently back on target. *Id*. at 81. Ms. Richardson stated that she has seen a 180-degree difference in all of the children since they have been in foster care from when they were in Father's and Mother's care. *Id*. at 89.

Ms. Richardson further opined that Children need a caregiver capable of providing emotional support, patience, guidance, nurture, and adequate supervision. *Id*. at 74, 93. Ms. Richardson stated that Father's impulsivity, aggressive behavior, and rash outbursts are one of the reasons why Children remain in foster care. *Id*. at 100-01. Ms. Richardson testified that she has observed Father lose his patience and become frustrated with Children during his visits with them. *Id*. at 93-98. Ms. Richardson stated that she has no confidence Father would be able to take care of Children for more than two hours a week. *Id*. at 90. Ms. Richardson testified that while

Father completed a parenting education program at ARC in 2012 and continually participated in various parenting classes at Family School, he failed to meet the overall objective of learning how to parent Children. *Id*. at 42-43, 124-31, 167-69.

Trina Anderson, a clinical case manager at Deveraux Foundation, testified that she has continuously been involved with this case since Children came into foster care with Deveraux in January of 2011. *Id*. at 176-77. Ms. Anderson stated that she supervised the visits between Father and Children at the agency and at his home. *Id*. at 178. Ms. Anderson testified that Father was highly involved and positively interacted with Children during the initial supervised visits. *Id*. at 180. However, when L.W.B., Jr., was first diagnosed with autism, Father had a hard time accepting his son was autistic and did not know how to manage his behavioral issues. *Id*. at 180-81.

Ms. Anderson testified that, once the visits moved to Father's house, the visits became chaotic because Father was not able to manage all four of the children at the same time. *Id*. at 184. Father became easily frustrated, resorting to yelling and threatening Children. *Id*. at 185. Ms. Anderson testified that Father was also involved in the Parenting Plus program at Deveraux, but was transferred out of that program after a determination was made that no additional services could be provided to him that would be

helpful. *Id*. at 187-90. Ms. Anderson stated that she does not believe Father can meet the needs of Children. *Id*. at 202.

Father also testified at the hearing. Father averred that he took parenting classes prior to DHS involvement until his incarceration, and has always been compliant with his medication. *Id*. at 230, 233. Father further testified that his visits with Children were positive, and he does not have a hard time managing all of the children at the same time. *Id*. at 246-47. Father stated that he has a great relationship and bond with Children, and that terminating his parental rights would devastate them. *Id*. at 241-47. Father testified that he plans to find appropriate housing with the assistance of his family members after he is released from prison. *Id*. at 249.

The trial court found Father's testimony to be at odds with the testimony of the caseworkers, and accepted the testimony of the caseworkers as being more credible. Trial Court Opinion, 3/31/16, at 20. The trial court opined that Father has a perspective on his relationship with Children that does not fit squarely with the facts of this case. *Id*. at 21. The trial court found the evidence confirmed that Father failed to perceive Children's real needs, and he will be unable to perceive their needs going forward. *Id*. at 20. As such, the trial court determined that Father is not in a position to parent Children and/or meet their required needs. *Id*. The trial court concluded there is no doubt Father loves Children very much; however, the evidence clearly establishes that Father did very little to

effectively remedy the issues that brought Children into foster care, and he is unlikely to have the ability to remedy those issues in the future. *Id*. at 20-21.

Father's argument regarding Section 2511(a)(2) essentially seeks for this Court to make credibility and weight determinations different from those of the trial court. The evidence clearly demonstrates that Father is incapable of providing Children with parental care, control or subsistence necessary for their physical or mental well-being. While Father may claim to love Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010). We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004).

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004). The trial court's findings are further strengthened by the

fact that the trial court and this Court denied DHS's original petition in 2012, giving Father an opportunity to meet his goals and objectives. During that time, Father has not achieved his goals and objectives. Accordingly, the record supports the trial court's conclusion that Father is incapable of parenting Children, and that Father cannot, or will not, remedy his parental incapacity. Thus, the trial court did not abuse its discretion in terminating Father's parental rights under Section 2511(a)(2). *In re Adoption of S.P.*, 616 Pa. at 325-26, 47 A.3d at 826-27.

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of Section 2511(b) are satisfied. *See In re C.L.G.*, 956 A.2d 999, 1009 (Pa.Super. 2008) (*en banc*). This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but, under Section 2511(b), the focus is on the child. *Id.* at 1008.

In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the

effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 620 Pa. 602, 628-29, 71 A.3d 251, 267 (2013).

As to the bond analysis, we have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa.Super. 2008).

In *In re T.S.M.*, our Supreme Court stated that:

Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

In weighing the difficult factors discussed above, courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail, as we have in this case, the result, all too often, is catastrophically maladjusted children. In recognition of this reality, over the past fifteen years, a substantial shift has occurred in our society's approach to dependent children, requiring vigilance to the need to expedite children's placement in permanent, safe, stable, and loving homes. ASFA was enacted to combat the problem of

foster care drift, where children, like the children in this case, are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children.

*In re T.S.M.*, 620 Pa. at 631-32, 71 A.3d at 269.

Here, Father argues the trial court erred by finding under 23 Pa.C.S.A. § 2511(b) that termination of his parental rights best serves Children's developmental, physical, and emotional needs. Father's Brief at 14. Father contends that Children are bonded with him, and terminating his parental rights would devastate them. *Id*. at 16.

With regard to Section 2511(b), Ms. Richardson acknowledged that there is a bond between Father and Children, but she did not feel it was a healthy one. N.T., 10/19/15, at 90-92. Ms. Richardson stated that Father has neither provided any care to Children nor met any of Children's needs for the past five years. *Id*. at 103-04. Ms. Richardson testified that Children acknowledge Father as their biological father, but look to their foster parents to care for them and provide for all of their daily needs and necessities. *Id*. at 91-103. Likewise, Ms. Anderson testified that Children have great interactions with their foster parents, call their foster parents "Mom" and "Dad," and have developed a bond with their foster parents after about five years of living with them. *Id*. at 195-98. Ms. Anderson stated that terminating Father's parental rights would have no effect on Children, and it would be in their best interest to be adopted. *Id*. at 199.

The trial court noted that Children have lived with their foster parents since leaving the shelter in January of 2011, when they were removed from their parents' care. Trial Court Opinion, 3/31/16, at 23. The trial court found that based upon the observations of Ms. Richardson and Ms. Anderson, Children are happy in their foster homes and look to their foster parents for comfort and fulfillment of their challenging daily needs. *Id*. The trial court noted that Father loves Children very much, but he does not serve Children's best interests because he is unable to perceive their real needs and is not in the position to parent Children in a way that will meet their challenging needs. *Id*. at 24. Accordingly, the trial court determined there will be no irreparable harm to Children if the bond is severed as Children will survive with love, care, and treatment. *Id*. Thus, the trial court found under Section 2511(b) that it would be in the best interests of Children if Father's parental rights were terminated. *Id*.

Our review of the record indicates there is clear and convincing, competent evidence to support the trial court's decision that termination of Father's parental rights best serves Children's developmental, physical, and emotional needs. Although Father has a bond with Children and loves them, he has not moved forward with his ability to provide for their needs and welfare. We have stated that the existence of a bond or attachment of a child to a parent will not necessarily result in the denial of the termination petition. *See In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa.Super. 2008). This

Court will not prolong instability for children when it is clear that their biological parents are unable to provide for their basic needs in the near future. *See In re T.S.M.*, 620 Pa. at 631-33, 71 A.3d at 268-70.

In the case *sub judice*, the trial court adequately considered the developmental, physical, and emotional needs of Children. Moreover, the trial court thoroughly considered Children's bond with Father, as well as the effect of severing that bond. The trial court properly found that, although there was evidence of a bond between Children and Father, it was in Children's best interests to sever that bond as it is outweighed by Children's need for adequate parenting and by their strong bond with their foster parents. Based on our review of the record, we conclude that the trial court did not abuse its discretion in terminating Father's parental rights to Children pursuant to Section 2511(b).

Accordingly, we affirm the trial court's decrees and orders terminating Father's parental rights on the basis of Section 2511(a)(2) and (b) of the Adoption Act, and changing Children's permanency goal to adoption under Section 6351 of the Juvenile Act.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2016